# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4155 | **DATE** | 2/5/2004 |
| **CASE TITLE** | Davis vs. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss is granted. Status hearing set for 2/26/04 is stricken. Any other pending dates are stricken. Any pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TH✓ | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTHUR L. DAVIS, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 03 C 4155 |
| v. | ) | |
| | ) | Judge St. Eve |
| JOHN E. POTTER, Postmaster General, | ) | |
| United States Postal Service, | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 23, 2003, plaintiff Arthur L. Davis Jr. ("Davis") filed a *pro se* complaint against Defendant John E. Potter, Postmaster General, United States Postal Service ("Postal Service"), for employment discrimination under Title VII of the 1964 Civil Rights Act[1], alleging that the Postal Service unlawfully terminated his employment based on his age, color, and race. Defendant seeks to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated herein, Defendant's motion is granted.

## BACKGROUND

Davis was employed by the Postal Service as a full-time Letter Carrier at the Loop Post Office in Chicago ("post office"). (R. 1-1, Compl. Attach. at 5.) On December 22, 2000, the Postal Service attempted to give Davis a letter of suspension stemming from events occurring on

---

[1] Davis used a form complaint of employment discrimination which automatically alleges violations of 42 U.S.C. § 1981. However, it is well established that Title VII is the exclusive remedy for federal claimants alleging discrimination in the workplace. *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 835 (1976). Similarly, Davis seeks relief under 42 U.S.C. § 1983, but that statute does not apply to claims of employment discrimination against a federal agency. *McGuinness v. United States Postal Service*, 744 F.2d 1318, 1322 (7th Cir. 1984). Accordingly, neither § 1981 not § 1983 provide a basis for the claims in the instant complaint, and they are dismissed.

1

December 21, 2000.[2] (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. F at 2.) Because Davis's union steward was not present, Davis refused to accept the letter of suspension. (*Id.*)

## A. December 28, 2000

On December 28, 2000, Davis reported to work at 10:00 a.m. and informed his supervisor, his assistant superintendent, and his superintendent that he needed to attend an Equal Employment Opportunity ("EEO") pre-hearing at his representative's office in a suburb of Chicago at 3:00 p.m. (R. 1-1, Compl. Br. at 4.) Davis's assistant superintendent telephoned Davis's representative to confirm the time and location of the pre-hearing. (*Id.*) Davis's superintendent then gave him his route and told him that he could attend the EEO pre-hearing. (*Id.*) The superintendent asked Davis to step into her office, and with his union steward present, she gave Davis the seven-day suspension that the Postal Service had attempted to give him on December 22. (*Id.*)

Davis left the station and began his delivery at about 11:45 a.m., returning his delivery truck to the Postal Service central garage – rather than the post office – at approximately 2:00 p.m. (*Id.*) Davis, who claims that he was never instructed to report back to his assistant superintendent prior to departing for his pre-hearing, locked his delivery truck and proceeded to his pre-hearing without checking in. (*Id.*) At approximately 4:00 p.m., Davis's assistant superintendent contacted Davis at his representative's office inquiring as to the whereabouts of the keys to Davis's delivery truck. (*Id.*) He also asked when Davis would return to the post office. (*Id.* at 5.)

Upon returning to the post office at approximately 4:45 p.m., Davis observed his assistant

---

[2] On December 21, 2000, Davis was unable to fit all of the parcels allotted to him for delivery into his delivery truck, leaving about 50 parcels on the post office loading dock. (R. 1-1, Compl. Attach. at 5.) Davis claims that he never received a form to explain why he left the parcels behind. (*Id.*) That same day, Davis returned to the station early without delivering 20 or more parcels that he had taken because he "became sick" when his blood pressure increased. (*Id.*) Davis alleges that he completed the appropriate paperwork for sick leave and went home for the day. (*Id.*) As a result of these events, the Postal Service ultimately suspended Davis. (R. 1-1, Compl. Br. at 4.) Davis filed an EEO complaint regarding his suspension on March 8, 2001. (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. D at 1.) Davis amended the March 8, 2001 EEO complaint on April 4, 2001 to include allegations that the Post Office effected Davis's removal from the service for discriminatory reasons. (R. 19-1, Def.'s Reply Supp. Mot. Dismiss Ex. A at 1.)

2

superintendent taking pictures of the undelivered mail in Davis's truck. (*Id.*) Davis alleges that he would have had sufficient time to complete his deliveries between the time of his return and the conclusion of his shift at 6:30 p.m. (*Id.*)

Davis alleges that on January 17, 2001 he received a letter dated January 12, 2001 placing him on administrative leave effective January 16, 2001. (*Id.*) Davis contends that he previously had been informed orally that he was on administrative leave, effective January 9, 2001, for his actions on December 28, 2001, including parking his truck in the wrong place, failing to follow instructions, and keeping the keys to his truck. (*Id.*)

### B. Notice of Removal and MSPB Appeal

On January 19, 2001, Davis received a proposed notice of removal for "Failure to Follow Instructions, Unauthorized Delay of Mail, [and] Unauthorized Deviation" stemming from the events of December 28. (*Id.* at 6.) A Letter of Decision dated February 16, 2001 removed Davis from the Postal Service. (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. B at 2.)

Davis appealed his removal from the Postal Service to the Merit Systems Protection Board ("MSPB") on March 7, 2001, raising affirmative defenses including disparate treatment and "[v]iolation of . . . the EEO process and Title VII . . . ." (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. C at 1-2.) The MSPB appeal also stated that Davis received the proposed notice of removal "because he had to go to an EEOC pre hearing." (*Id.* at 5.) The MSPB appeal stated that Davis had "not filed a complaint with [the] EEOC in connection with" the matter appealed. (*Id.* at 3.)

### C. The EEO Complaint

On March 8, 2001, Davis filed an EEO Complaint of Discrimination with the Postal Service. (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. D at 1.) The complaint alleged that Davis received the December 28, 2001 suspension in retaliation for prior EEO activity. (*Id.*) In the complaint, Davis discussed the events of December 22 and December 28, as well as the fact that Davis was placed on administrative leave. (*Id.*) Davis did not, however, mention his removal in the EEO complaint. (*Id.*) When completing the complaint forms, Davis checked the

3

box that indicated that he had not filed an MSPB appeal on the issues raised in the complaint. (*Id.* at 2.)

On April 4, 2001, Davis provided the EEO with information challenging his removal from the Postal Service and requested that his March 8, 2001 complaint be amended to include the removal claim. (R. 19-1, Def.'s Reply Supp. Mot. Dismiss Ex. A at 1.) At this time, he indicated that he had filed an MSPB appeal on this issue, listing March 9, 2001 as the date of the MSPB appeal, not March 7, 2001. (*Id.* at 3.)

### D.     The MSPB's Findings

An administrative judge ("AJ") from the MSPB held a telephonic status conference with Davis's representative on May 7, 2001. (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. E at 1.) Davis's representative reiterated that Davis was removed in reprisal for protected activity. (*Id.*) at 2. Prior to addressing the merits of Davis's complaint, the AJ recognized that Davis had filed a formal EEO discrimination complaint with respect to his suspension, but not with respect to his removal. (*Id.*)

On July 5, 2001, the MSPB found that Davis had not shown by a preponderance of the evidence that the Postal Service effected his removal in reprisal for protected activity (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. F at 10.). The MSPB therefore affirmed Davis's removal. (*Id.* at 13.) Davis petitioned the Board to reconsider the initial decision. (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. G at 1.) The Board denied the petition for review on June 12, 2002, making the initial decision final. (*Id.*) The Final Order informed Davis that he had 30 calendar days to request a review of the Final Order from the Equal Employment Opportunity Commission ("EEOC"), and 30 days to file a civil action on the discrimination claims in the appropriate United States District Court. (*Id.* at 2.)

### E.     The EEO Final Agency Decision

Davis requested a hearing for his EEO complaint on November 12, 2002. (R. 1-1, Compl. Attach. at 1.) On February 19, 2003, an AJ held a pre-hearing conference regarding Davis's EEO complaint, and noted his intent to dismiss the EEO complaint pursuant to a

regulation mandating dismissal "where the complainant has raised the matter in . . . an appeal to the [MSPB]." (*Id.* at 2.) (citing 29 C.F.R. § 1614.107(a)(4)). The pre-hearing ruling required Davis to object to the dismissal of the complaint by March 5, 2003, and to provide a legal basis for why the AJ should not dismiss his complaint. (*Id.*)

On March 5, 2003, Davis withdrew his request for a hearing and requested a final agency decision in the EEO proceedings. (*Id.*) The agency issued a Final Agency Decision ("FAD") on April 11, 2003 that dismissed the removal portion of the complaint and closed the remaining issues – including those issues regarding the suspension issued on December 28, 2000 – with a finding of no discrimination based on age, race, or retaliation. (*Id.* at 7.) The FAD gave Davis 30 days to appeal to the EEOC and 90 days to file a civil action in the appropriate United States District Court. (*Id.*) Davis filed the present action in this Court on June 18, 2003.

## ANALYSIS

The Postal Service moves to dismiss Davis's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Davis cannot base a civil action on either his MSPB appeal or his EEO complaint because Davis failed to exhaust his administrative remedies and timely file a civil action for judicial review. (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss at 4-5.) Because failure to exhaust administrative remedies is not a jurisdictional issue, *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000), the Court will analyze this motion under Rule 12(b)(6) rather than Rule 12(b)(1). *Boutte v. Principi*, No. 02 C 1916, 2003 WL 262425, *1 (N.D. Ill. Jan. 27, 2003). When addressing a motion to dismiss, the court takes all of the facts pled by the plaintiff as true and construes all inferences in favor of the plaintiff. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

In assessing a motion to dismiss, the Court views the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). *See also Thomas v. Law Firm of Simpson & Cybak*, 354 F.3d 696 (7th Cir. Jan. 13, 2004). The Court may review documents attached to a complaint on a motion to

dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F. 3d 969, 971 (7th Cir. 2002) (citations and quotations omitted). "A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) (quotations omitted). The Court may also consider documents referred to in a plaintiff's complaint and attached to a motion to dismiss if they are central to the plaintiff's claim, even if the plaintiff did not attach them to his complaint. *Duferco Steel, Inc. v. M/V Kalisti*, 121 F.3d 321, 324 n. 3 (7th Cir.1997). Furthermore, courts may take judicial notice of the record of an administrative proceeding. *Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000).

Davis has attached a brief entitled "Chronology of Facts" to his complaint, along with the EEO FAD. The EEO FAD references the MSPB proceedings, which constitute the basis for the EEO's dismissal of Davis's removal complaint. (R. 1-1, Compl. Attach. at 2.) Davis also discusses the MSPB proceedings in his response to the Postal Service's motion to dismiss. (R. 18-1, Pl.'s Resp. Def.'s Mot. Dismiss at 1.) The complaint, the attachments to the complaint, and Davis's response to the instant motion all evidence the centrality of the MSPB proceeding documents to the dismissal of Davis's EEO complaint, and thus to his instant complaint. Therefore, the Court will take judicial notice of the administrative proceedings[3] and consider them here.

Similarly, Davis mentions filing the EEO complaint in his response to the Postal Service's motion to dismiss. (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. D.) The allegations contained in the amended EEO complaint formed the basis for the EEO's dismissal of the removal portion of the complaint. (R. 19-1, Def.'s Reply Supp. Mot. Dismiss Ex. A.) The EEO complaint and its amendment culminated in the EEO FAD attached to Davis's complaint in this action. Accordingly, the Court will consider the EEO complaint and its amendment.

---

[3] Summary of May 7, 2001 Telephonic Status Conference (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. E); Initial Decision (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. F); MSPB Final Order (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. G).

## I. *Jurisdiction*

The time limits for filing civil actions for judicial review of administrative decisions stem from both regulation and statute. Administrative deadlines for bringing a discrimination complaint to the attention of an agency are treated as statutes of limitations rather than jurisdictional requirements. *Rennie v. Garret*, 896 F.2d 1057, 1062-1063 (7th Cir. 1990). Similarly, although federal employees asserting Title VII claims must exhaust their administrative remedies before filing a civil action in federal district court, *McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995) (citing *Brown v. General Services Admin.*, 425 U.S. 820, 832 (1976)), the exhaustion of administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement. *Gibson*, 201 F.3d at 994.

If Davis has not timely filed his complaint or properly exhausted his administrative remedies, he is barred from proceeding with the instant complaint. Determining whether Davis exhausted his administrative remedies and timely filed for judicial review of the administrative proceedings requires an examination of the administrative proceedings related to Davis's removal.

## II. *Administrative Framework and Proceedings*

Congress has authorized the MSPB, an independent quasi-judicial federal administrative agency, to review civil service decisions made by various governmental agencies regarding the employees of these agencies. *Chaney v. Rubin*, 986 F. Supp. 516, 520 (N.D. Ill. 1997). The MSPB's appellate jurisdiction includes appeals from agency personnel actions, including the action of "[r]emoval . . . for cause that will promote the efficiency of the service." 5 C.F.R. § 1201.3. The Postal Service EEO, on the other hand, processes individual and class complaints of employment discrimination and retaliation prohibited by Title VII. 29 C.F.R. § 1614.103. Where the jurisdiction of the two administrative tribunals overlap – for example, when an agency allegedly effects an adverse personnel action for retaliatory or discriminatory purposes – a "mixed" proceeding results. *See* 29 C.F.R. § 1614.302 (defining "mixed case complaints" and "mixed case appeals").

7

A federal employee alleging that an agency took an adverse personnel action[4] motivated by discrimination has two avenues to challenging that action. 29 C.F.R. § 1614.302(b). He may initially file a "mixed case complaint"[5] with an agency or a "mixed case appeal"[6] regarding the same matter with the MSPB, but he may not file both a "mixed case complaint" and a "mixed case appeal." *Id.*

If an employee files both a "mixed case complaint" and a "mixed case appeal," whichever he filed first shall be considered his election of that forum. *Id.* If, prior to receiving a request for a hearing in a complaint before the agency EEO, it learns that the aggrieved employee elected a non-agency forum such as the MSPB, the agency shall dismiss the entire complaint. 29 C.F.R. § 1614.107(a)(4). Similarly, if the agency determines that the employee elected a non-agency forum for only some of the claims in a complaint, the agency must dismiss those claims and notify the aggrieved employee.[7] 29 C.F.R. § 1614.107(a)(4). Where the agency dismisses some of the claims in the complaint and neither the MSPB nor the agency AJ question the MSPB's jurisdiction, the agency shall notify the aggrieved employee that the rejected allegations of discrimination must be brought to the attention of the MSPB. 29 C.F.R. § 1614.302(c)(2).

In his MSPB appeal, Davis indicated that he was removed "because he had to go to an EEOC pre hearing." (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. C at 5.) Davis raised the affirmative defenses of disparate treatment and "[v]iolation of . . . the EEO process and Title VII . . . ." (*Id.* at 1-2.) Therefore, Davis's appeal is properly classified as a "mixed case appeal." Similarly, when Davis added the removal action to his EEO complaint, the EEO complaint

---

[4] Removal constitutes an adverse personnel action. 5 U.S.C. § 7712.

[5] A "mixed case complaint" is a "complaint of employment discrimination filed with a federal agency . . . related to or stemming from an action that can be appealed to the [MSPB]," and may contain additional allegations within the jurisdiction of the MSPB. 29 C.F.R. § 1614.302(a)(1).

[6] A "mixed case appeal" is an "appeal filed with the MSPB alleging that an agency action within the appellate jurisdiction of the MSPB . . . was effected, in whole or in part, because of discrimination. 29 C.F.R. § 1614.302(a)(2).

[7] For example where a matter in a "mixed case complaint" was previously raised in a "mixed case appeal," the agency must dismiss those claims and notify the employee. 29 C.F.R. § 1614.302(c)(1).

8

became a "mixed case complaint."

Since Davis filed his "mixed case appeal" prior to filing his EEO complaint or attempting to transform his existing EEO complaint into a "mixed case complaint" with the EEO, Davis effectively elected the MSPB as the forum for the resolution of his removal complaint. As directed by the regulations, the EEO dismissed Davis's removal complaint – without objection from Davis –from its proceedings due to Davis's prior election of the MSPB as the forum for challenging his removal.

### *III. Notice of Election*

An agency must inform every employee who has raised the issue of discrimination during the processing of an action of the right to file either a "mixed case complaint" with the agency or a "mixed case appeal" with the MSPB. 29 C.F.R. § 1614.302(b). Under such circumstances, the agency must advise the employee that he may not initially file both a "mixed case complaint" and a "mixed case appeal" on the same matter, and that whichever is filed first shall be considered an election of that forum. *Id.*

Davis complains that he "was never given any notice from the agency about his election in a mixed case appeal." (R. 18-1, Pl.'s Resp. Def.'s Mot. Dismiss at 1.) Davis, however, did not raise the issue of discrimination during the processing of his removal. Davis does not claim that he responded to the proposed notice of removal by claiming that he was discriminated against or otherwise bringing his discrimination or retaliation claims to the attention of those processing his proposed removal. Indeed, the removal letter indicates that Davis "did not submit an oral or written reply [to the notice of proposed removal] within the allowable time limits." (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. B at 1.) On the contrary, Davis waited until he appealed the adverse action to raise the issue of discrimination. Therefore, the Postal Service was under no obligation to inform Davis that he could proceed either before the MSPB or the EEO, but not both.

### *IV. Judicial Review*

In any matter that includes issues of discrimination prohibited by law and otherwise

appealable to the MSPB, an aggrieved employee may request judicial review of a final agency decision within 90 days of receiving that decision. 42 U.S.C. § 2000e-16(c) ("[w]ithin 90 days of receipt of notice of final action taken by a[n] . . . agency . . . an employee . . . if aggrieved by the final disposition of his complaint . . . may file a civil action . . ."); 29 C.F.R. § 1614.407(a). In an action involving discrimination before an agency, it is the "*decision* of the agency in any such matter [that] shall be a judicially reviewable action . . . ." 5 U.S.C. § 7702(a)(2) (emphasis added); *see Harms v. Internal Revenue Service*, 146 F. Supp. 2d 1128, 1136 n.14 (D. Kan. 2001) (noting that if the plaintiff could have challenged the dismissal of an EEO complaint in a federal court, the district court's review would be limited to determining whether the EEO complaint was properly dismissed), *aff'd*, 321 F.3d 1001 (10th Cir. 2003), *cert. denied*, 124 S. Ct. 159 (2003).

An employee who has received a decision from the MSPB may request judicial review of that decision within 30 days of receiving notice of the final decision or final action, unless the individual files a petition for consideration with the Equal Employment Opportunity Commission ("EEOC"). 5 U.S.C. §§ 7702(a)(1), (3); 29 C.F.R. § 1614.310(b); *see* 5. U.S.C. § 7703(b)(2) ("[n]otwithstanding any other provision of law, [cases of discrimination subject to the provisions of section 7702 of this title] must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702"). It is the "*decision* of the [MSPB that] shall be . . . judicially reviewable . . . ." 5 U.S.C. § 7702(a)(3) (emphasis added).

Davis alleges that his removal was discriminatory and seeks relief from it. The EEO FAD, however, never addressed the merits of Davis's removal. Prior to issuing the FAD, the EEO AJ informed Davis in a pre-hearing ruling that the removal portion of his EEO complaint would be dismissed, and provided Davis with the opportunity to object to the dismissal. Davis declined to object, withdrew his request for a hearing, and requested a FAD. The EEO thereafter issued the requested FAD, dismissing the removal portion of Davis's complaint and closing the remaining issues – including those related to his December 28, 2000 suspension – with a finding

of no discrimination. Accordingly, the decisions that are subject to judicial review from the EEO FAD include whether the EEO properly dismissed Davis's removal complaint, and whether the Postal Service discriminated against Davis when they suspended him or placed him on administrative leave.

In reviewing Davis's *pro se* complaint liberally, *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000), Davis seeks review of the EEO's decision dismissing the removal portion of his complaint and of the MSPB's Final Order finding that the Postal Service did not remove Davis in retaliation for his participation in protected EEO activity. The Court must therefore determine whether Davis has exhausted his administrative remedies and timely filed this complaint.

## V. *Exhaustion of Administrative Remedies*

The exhaustion doctrine affords administrative agencies the opportunity to resolve matters internally and to avoid unnecessarily burdening the courts. *Wilson v. Pena*, 79 F.3d 154, 165 (D.C. Cir. 1996). Although the exhaustion of administrative remedies is not a jurisdictional requirement to bringing a Title VII claim in federal court, *Gibson*, 201 F.3d at 994, federal employees asserting Title VII claims must exhaust their administrative remedies before filing a civil action in federal district court. *McAdams*, 64 F.3d at 1141 (citing *Brown*, 425 U.S. at 832). If an employee forces an agency to dismiss or cancel a complaint by refusing to provide the information necessary for the agency to address the claim, he may not file a judicial suit. *Wilson*, 79 F.3d at 164. Even though a dismissal normally triggers the right to sue, a suit under these circumstances is barred for failure to exhaust administrative remedies. *Id.* at 164-165. On the other hand, once an employee files a complaint and cooperates with the agency until the agency reaches a decision or the requisite period of time has passed without a decision, the employee has sufficiently exhausted his administrative remedies. *Id.* at 166; *see* 29 C.F.R. § 1614.407(b) (providing that a complainant may file a civil action after 180 days from the date of filing a complaint have passed if no action has been taken).

Davis did not exhaust his administrative remedies in the EEO proceedings. When the AJ

informed Davis that the removal complaint would be dismissed, the AJ provided Davis with the opportunity to object to the dismissal, requiring Davis to provide the legal basis for why the complaint should not be dismissed. Davis chose not to object, and withdrew his request for a hearing. In doing so, Davis forced the AJ to dismiss Davis's complaint and denied the EEO the opportunity to resolve the dispute internally and thereby avoid unnecessarily burdening the courts. Accordingly, Davis failed to exhaust his administrative remedies and cannot base a civil action contesting his removal upon the EEO FAD. *See Hill v. Potter*, 352 F.3d 1142, 1146 (7th Cir. 2003) (stating that a Postal Service employee's refusal to cooperate with the EEOC constituted failure to exhaust ); *see also Rann v. Chao*, 346 F.3d 192, 196-197 (D.C. Cir. 2003) (indicating that forcing the dismissal of an agency EEO complaint by refusing to respond to an EEO investigator's request constituted failure to exhaust).

On the other hand, Davis did exhaust his remedies with respect to the MSPB proceedings. Davis cooperated with the MSPB proceedings until the MSPB reached a decision regarding his removal. Once the MSPB reached its decision, Davis had three options: (1) request the EEOC to review the decision of the MSPB on the discrimination claims, (2) request the Federal Circuit to review the decision of the MSPB on the non-discrimination claims, or (3) file a civil action in an appropriate district court within 30 days of receiving the final order. (R. 14-1, Def.'s Mem. Supp. Mot. Dismiss Ex. G at 2.) Davis chose not to seek review by the EEOC or the Federal Circuit. Similarly, Davis did not file a civil action within the 30 days allotted. By not filing his action within the allotted timeframe, Davis failed to fulfill a precondition to filing a civil action in a district court. The Court must therefore determine whether equitable considerations favor allowing Davis to proceed with a civil action despite the tardiness of his complaint.

*VI. Timeliness*

Because administrative deadlines for bringing a discrimination complaint to the attention of an agency operate as statutes of limitations rather than jurisdictional requirements, *Rennie*, 896 F.2d at 1062-1063, equitable estoppel may extend the period of time during which an

aggrieved party may seek judicial review.[8] *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990).

Generally speaking, a defendant that takes active steps that prevent a plaintiff from suing in time gives the plaintiff cause to invoke the doctrine of equitable estoppel. *Cada*, 920 F.2d at 450. Asserting equitable estoppel against the government, however, requires more than asserting equitable estoppel against a private employer: the government must have engaged in "affirmative misconduct." *Gibson*, 201 F.3d at 994. The government's mere failure to discharge an affirmative obligation does not constitute affirmative misconduct. *Id.* Rather, such an omission amounts to "ordinary negligence," and mere negligence on the part of the government will not support the invocation of equitable estoppel because affirmative misconduct requires the government to affirmatively misrepresent or mislead. *Id.*

Davis does not claim that the conduct of the Postal Service entitles him to the benefit of the doctrines of equitable estoppel. Davis does not contend that the government engaged in affirmative misconduct that prevented him from filing his complaint in a timely manner. Davis instead complains that the government failed to inform him that proceeding in the MSPB constituted an election of that forum. Even assuming that the government was obliged to provide Davis with information regarding his options in seeking administrative remedies,[9] the government's failure to discharge that affirmative obligation would not rise to the level of affirmative misconduct. Accordingly, equitable estoppel does not toll the time that Davis had to file suit following the MSPB Final Order.

Davis failed to timely file a complaint after receiving the Final Order in his MSPB appeal. The complaint neither pleads nor alleges any facts that would entitle Davis to the benefit of equitable estoppel or equitable tolling. Accordingly, Davis cannot base the instant complaint

---

[8] Equitable tolling may also extend the time period for seeking judicial review. In order to invoke equitable tolling, an employee need only show the inability to discover essential information bearing on the claim by the exercise of reasonable diligence. *Cada*, 920 F.2d at 450. Davis has not made such a claim.

[9] As discussed above, the regulations require that the agency inform the employee of his options for challenging dismissal during the processing of the adverse action. 29 C.F.R. § 1614.302(b). In this case, the adverse action was Davis's removal.

13

upon the Final Order in his MSPB appeal.

## CONCLUSION

For the foregoing reasons, the Postal Service's motion to dismiss is granted.

Dated: February 5, 2004

AMY J. ST. EVE
United States District Court Judge